560 So.2d 63 (1990)
STATE of Louisiana In the Interest of N.T., I.T., & F.W.
No. 89-CA-753.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 1990.
*64 John M. Mamoulides, Dist. Atty., Jamie Veverica, Asst. Dist. Atty., Gretna.
Janice L. Kazmier, Sp. Asst. Dist. Atty., Gretna.
Samuel Stephens, Jefferson Parish Juvenile Court, Gretna.
Catherine LaFleur, Pam Brookey, New Orleans.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
A natural mother, Florita Tyler, appeals a judgment terminating her parental rights to her three daughters, N.T. born November 19, 1979; and I.T. born November 10, 1985; and F.W. born April 25, 1983.
The Louisiana Department of Social Services took custody of the three children in May of 1986 after the Department found merit in a complaint alleging that Florita Tyler, in exchange for money, allowed a man posing as a police officer to sexually abuse her daughter N.T., who, at the time of the abuse was six years old. At the time the children were taken into custody by the State, Florita Tyler was incarcerated for these offenses committed against her child.
Florita Tyler was charged by grand jury indictment with two counts of aggravated oral sexual battery (LSA-R.S. 14:43.4), two counts of indecent behavior with a juvenile (LSA-R.S. 14:81) and two counts of enticing into prostitution (LSA-R.S. 14:86). On June 9, 1987, Tyler pled guilty to the first four counts and the other counts were dismissed. On August 7, 1987, the trial judge imposed concurrent sentences of nine years at hard labor on counts one and two and five years at hard labor on counts three and four. Her convictions and sentences were affirmed on appeal by this court. See State v. Tyler, 524 So.2d 239 (La.App. 5th Cir.1988).
Pursuant to a petition filed in the Jefferson Parish Juvenile Court and after Florita Tyler admitted the allegations contained in the petition, the three children were adjudicated to be "in need of care" on June 17, 1986. The Department, after finding no suitable placement with relatives, chose to pursue the termination of Tyler's parental rights. Since the children were originally taken into custody, they have remained with the same foster parents, who have now expressed their desire to adopt all three children.
The state filed in the Jefferson Parish Juvenile Court a Petition for Termination of Parental Rights pursuant to LSA-R.S. 13:1600 et seq., asking that the parental rights and responsibilities of Florita Tyler be totally and permanently terminated with regard to her three female children, N.T., I.T. and F.W. After a hearing, judgment was rendered ordering that the Petition for Termination of Parental Rights filed against Florita Tyler be granted, and that all parental rights and obligations of Florita Tyler relative to her three children be totally and irrevocably terminated and dissolved pursuant to LSA-R.S. 13:1600-1606.
Florita Tyler has appealed and designates four assignments of error.
ASSIGNMENT OF ERROR NO. ONE
In the judgment terminating Tyler's parental rights, the trial judge relied on LSA-R.S. 13:1601(A), (B), and (D), finding that the state proved all the elements of these three specific sections. These sections which will be discussed here read as follows:
*65 Section 1601. Petitioning for the termination of parental rights
The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsections A, B, C, D, E, or F, of this Section. The district attorney may appoint any attorney representing the Department of Social Services as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant.
A. (1) The abuse or neglect of the child by the parent or parents results from a crime committed against the person of the child or a crime committed against another child of the parent or parents or when a parent is an accessory to such a crime committed against the person of the child or another child of the parent or parents.
(2) The abuse or neglect of the child by the parent or parents consists of cruel and inhuman treatment which is below a reasonable standard of human decency.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
B. (1) One year has passed since the rendition of an abuse or neglect judgment or child in need of care judgment, as defined in R.S. 13:1600(7), pursuant to the Code of Juvenile Procedure, and in the opinion of the court the parent is unfit to rear the child.
(2) The parent or parents have shown no significant substantial indication of reformation and are unlikely to reform.
* * * * * *
D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
(2) The child was removed from the custody of the parents by judicial order due to the parent's abuse or neglect of the child.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, and the department recommends that it would not be in the best interest of the child to be reunited with his parents.
LSA-R.S. 13:1603 provides, in pertinent part:
A. Whenever the court of proper jurisdiction finds that the allegations of Subsection A, B, C, D, E, or F of R.S. 13:1601 are proven true by the evidentiary standards set forth in this Section, it may order the termination of parental rights of the parent or parents against whom the allegations are proven.
Under Subsection A of R.S. 13:1601, Paragraph (1) must be proven beyond a reasonable doubt. Paragraphs (2) and (3) must be proven by clear and convincing evidence.
Under Subsection B of R.S. 13:1601, Paragraphs (1) and (2) must be proven by clear and convincing evidence.
* * * * * *
Under Subsection D of R.S. 13:1601, Paragraph (1), (2), (3), and (4) must be proven by clear and convincing evidence.
In this alleged error, appellant argues that the state failed to prove that Florita Tyler was incapable of reform. See LSA-R.S. 13:1601(A)(3), (B)(2), (D)(3).
More specifically, she alleges:
In regards to whether Ms. Tyler had the capacity to reform, the state failed to prove that Ms. Tyler: (1) is unfit to retain parental control and there is no reasonable expectation of reformation on her part. La.Rev.Stat. 13:1601(A)(3); (C)(3); and (D)(3); or (2) has shown no significant substantial indication of reformation and is unlikely to reform. La. Rev.Stat. 13:1601B(2). By the terms of *66 the statute, the state's failure to make such a showing of Ms. Tyler's present and future inability to care for her children means that termination was premature, and thus the trial court's decision should be vacated.
In finding that the state successfully proved this element, the trial judge, in part, stated:
In May, 1989, Dr. Richard Richoux evaluated Ms. Tyler to determine the possibility of rehabilitation as to her parenting skills. Dr. Richoux testified that although it was `theoretically possible' for Ms. Tyler to become a successful parent if, upon release from prison, she received intensive, closely monitored services for parenting skills and substance abuse counseling, nevertheless, it would be `absurd' to think she would be able to parent these children without at least one year of intensive, successful treatment. He recommended long term treatment for her borderline personality disorder and her substance abuse problem.
The record, as a whole, and more particularly the testimony of Dr. Richoux supports the position that the state successfully proved by clear and convincing evidence that there is no reasonable expectation of reformation on the part of Florita Tyler. To be considered in this determination is Tyler's long history of substance abuse, in addition to Dr. Richoux's testimony that although it was theoretically possible for her to become a successful parent, it would require intensive, closely monitored programs for parenting skills and substance abuse for at least one year, provided the treatment is even successful.
Accordingly, based on the above discussion, the state has proved all of the elements of LSA-R.S. 13:1601(A) and (B) as to all three children, and therefore, the judgment of termination was properly granted.
Pursuant to 13:1601(A), the state proved as to all three children: (1) beyond a reasonable doubt that the abuse of these children resulted from crimes Florita Tyler committed against her eldest child, N.T., namely two counts of aggravated oral sexual battery and two counts of indecent behavior with a juvenile; (2) beyond clear and convincing evidence that the abuse consisted of cruel and inhuman treatment which was below a reasonable standard of human decency, namely allowing a man to sexually abuse her six year old daughter in exchange for money to support Tyler's cocaine habit; (3) the state also proved by clear and convincing evidence that Tyler is unfit to retain parental control and there is no reasonable expectation of reformation as discussed above. This third element was proven by the testimony of Dr. Richoux and also by Tyler's long history of substance abuse and her testimony that she did not attend substance abuse groups at St. Gabriel Correctional Center.
The elements of LSA-R.S. 13:1601(B) have also been successfully proven as to all three children. The state proved by clear and convincing evidence that: (1) more than one year has passed since the rendition of the child in need of care judgment (June 17, 1986), and the court has expressed its opinion that the parent is unfit to rear the child; (2) as stated above, the parent has shown no significant substantial indication of reformation and is unlikely to reform.
Accordingly, it can be said, without considering the remaining assignments of error that the state met its burden of proof under at least one of the sections of LSA-R.S. 13:1601 and therefore, the judgment of termination is supported by the evidence. It has been held that the State, in a termination proceeding, is not required to prove all conditions of the termination statute (LSA-R.S. 13:1601(A)-(F), but rather is required to prove any one of the six listed sections. State In Interest of C.V. v. T.V., 499 So.2d 159 (La.App. 2nd Cir.1986), writ denied 500 So.2d 411 (La.1986).
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. TWO
The appellant has urged that the state cannot terminate parental rights under LSA-R.S. 13:1601(D)(4) when the state did not show it made any efforts to reunite the family.
*67 As noted above, since the state has proved all of the elements of either LSA-R.S. 13:1601(A) or 13:1601(B), then it makes no difference whether the state proved efforts to reunite because a finding under any one of the sections of 13:1601(A), (B), (C), (D), (E), or (F) is sufficient to sustain a judgment of termination. However, this issue will be briefly discussed.
Candice Morrison, employed by Office of Community Services as child protection supervisor, testified that on several occasions she talked to Tyler while she was incarcerated about the condition of her children. However, Tyler informed Morrison that she did not want her children to visit her while she was in the Jefferson Parish Correctional Center. While at St. Gabriel Correctional Center Tyler only had one visit with her children. Morrison testified that there were no services she could offer to Tyler while she was incarcerated. She further testified that the Office of Community Services could not do a lot of reuniting because Tyler had been in jail since May, 1986.
According to LSA-R.S. 13:1601(D)(4), the state must show that the Department of Social Services has made every reasonable effort under the circumstances to reunite the child with the parents. Under the circumstances of this case, Tyler's incarceration, the only action the agency could take toward reunification was visitation. As stated above, the mother requested that the children not visit her while at the Correctional Center in Gretna, and while at St. Gabriel, the mother requested visitation from the agency on only one occasion. When this request was made the agency complied and arranged the visitation. This assignment of error lacks merit.
Assignments of Error No. Three and Four deal with Section E of LSA-R.S. 13:1601 and the trial judge did not rely on Section E to support his finding that parental rights should be terminated, but instead relied on Sections (A), (B), and (D). Accordingly, these assignments need not be addressed here.
The state has successfully proven the elements necessary to terminate the parental rights of Florita Tyler as to all three children, N.T., I.T. and F.W.
Accordingly, the judgment of the Juvenile Court is affirmed.
AFFIRMED.