LINDSAY, Judge.
At the conclusion of his jury trial, the defendant, Darrin D. Gilmer, was found guilty as charged of armed robbery and aggravated burglary. On the armed robbery conviction, the defendant was sentenced to serve 50 years at hard labor, without benefit of parole, probation or suspension of sentence. For aggravated burglary, he received a sentence of 25 years at hard labor, with one year to be served without benefit of parole, probation or suspension of sentence. The sentences were ordered to be served concurrently. The defendant now appeals his convictions and sentences. For the following reasons, we affirm the defendant’s convictions. As amended, we affirm his sentences.
FACTS
On March 16,1987, at approximately 2:50 p.m., T.F. arrived at the North Shreveport home she shared with her six-year-old son, her parents and her sister. T.F. noticed two strange bicycles under the carport. None of the other residents were at home. *119 T.F. entered the dwelling and saw a man standing on the patio with a rifle. T.F. tried to run out the back door but was stopped by a second man who entered the house. The two men struck T.F. numerous times about the head and forced her to lie face down on the floor.
At that point, T.F.’s six-year-old son arrived home from school and was also forced to lie face down on the floor. The two men went through T.F.’s purse, taking the jewelry she was wearing, as well as the keys to her car. The two men also took a shotgun from the house, a camera, some loose change and some clothing belonging to T.F.’s father.
As these crimes progressed, T.F. and her son were taken to separate bedrooms in the home. The child was tied to a chair with an extension cord. T.F. was forced to lie on a bed and her ankles were bound with a telephone cord. T.F. was then raped by the assailants.
The assailants left the house, taking T.F.’s automobile and the other items mentioned above. T.F. alerted the police. Officers of the Shreveport Police Department arrived and processed the crime scene. They obtained numerous latent fingerprints from the bicycles and from various points in the house, including the patio door and a jewelry box.
T.F. furnished the police with descriptions of the assailants. She stated that the individual armed with the rifle was wearing blue jeans and a red and white shirt. She also stated that this individual had a gold tooth.
T.F.’s car was recovered on ■ March 27, 1987. However, the police were unable to develop any leads in the case for several years. Some years later the Louisiana State Police in Baton Rouge obtained an automated fingerprint identification system computer (AFIS). Using this computer system, law enforcement agencies from around the state were able to send latent fingerprints to Baton Rouge for possible matches with known fingerprints on file with the state police. The defendant had previously been convicted of other offenses and his fingerprints were on file.
In 1990, the Shreveport Police Department submitted the latent fingerprints from this crime to the state police. The computer indicated a possible match between the defendant’s known fingerprints and some of the latent prints recovered from the crime scene. A fingerprint expert with the Shreveport Police Department then made an analysis of the defendant’s prints and those found at the crime scene and determined that some of the fingerprints were those of the defendant. The defendant was already in custody at that time on an unrelated charge.
A live lineup was conducted. T.F. was not able to identify the defendant in the lineup. However, her son was able to positively identify the defendant as the person who was in the house with the gun and who tied the boy to a chair.
The defendant was charged with armed robbery and aggravated burglary. On August 27, 1991, at the conclusion of his jury trial, the defendant was found guilty as charged.
The defendant appealed his convictions and sentences. The defendant contends that the trial court erred in requiring him to exhibit his gold tooth to the jury, and in allowing testimony regarding the sexual attack upon T.F. He also contends that his sentences are excessive.
VICTIM’S IDENTIFICATION
The defendant contends that the trial court erred in requiring him to reveal his gold tooth to the jury, arguing that the evidence was irrelevant, and immaterial and the procedure was highly prejudicial. The defendant argues that he was required to exhibit his teeth during the testimony of T.F.; but that T.F. had not identified the defendant and was never asked any questions about a gold tooth. The defendant seems to argue that no foundation was laid for the request that the defendant exhibit his teeth. This argument is meritless and is factually incorrect.
During T.F.’s testimony, she was asked to describe her assailants. She first described the man she saw on the patio with *120 the rifle. He was wearing an old red T-shirt and blue jeans. She described this individual as being between 5 feet 6 inches and 5 feet 10 inches tall, weighing 155 pounds, with a full head of hair. She specifically testified that this individual had a gold tooth. The prosecution questioned T.F. further to confirm that this assailant had a gold tooth. She responded affirmatively. However, T.F. was not able to positively identify the defendant.
After questioning T.F., the defendant was asked to show his teeth to the jury. The defendant objected, claiming that whether he presently had a gold tooth was irrelevant. The objection was overruled and the defendant complied with the directions of the court, revealing that he did, in fact, have a gold tooth.
LSA-C.E. Art. 401 provides that “relevant evidence” means evidence “having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” LSA-C.E. Art. 402 provides that “All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible.” LSA-C.E. Art. 403 provides that, “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay or waste of time.”
The defendant’s identity as the assailant was a fact of consequence in this case. The victim, T.F., stated that the assailant had a gold tooth. Whether the defendant had a gold tooth was relevant to the identity issue. Also, introduction of this evidence was not unfairly prejudicial and did not mislead the jury. See State v. Square, 433 So.2d 104 (La.1983); State v. Odom, 273 So.2d 261 (La.1973).
The defendant did not argue that the requirement that he exhibit his teeth to the jury was a violation of his constitutional rights. Nevertheless, it is well settled that the requirement of exhibiting identifying characteristics is demonstrative, rather than testimonial, evidence and is not viola-tive of the Fifth Amendment right against compulsory self-incrimination. State v. Martin, 519 So.2d 87 (La.1988); State v. Collins, 328 So.2d 674 (La.1976).
Under the facts of this case, whether the defendant had a gold tooth was relevant. The trial court did not err in requiring the defendant to exhibit his teeth to the jury.
OTHER CRIMES
The defendant argues that the trial court erred in allowing testimony concerning the sexual attack on T.F. During the trial, the defendant objected to the admissibility of any testimony concerning the sexual attack and moved for a mistrial. The trial court overruled the defendant’s objection and allowed the testimony. On appeal, the defendant contends that the testimony was “so prejudicial and inflammatory that it outweighed its probative value to such an extent as to make the trial court’s decision an error of reversible magnitude.”
The defendant contends that under LSA-C.Cr.P. Art. 775, upon motion of the defendant, a mistrial shall be ordered when judicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. The defendant further argues that allowing testimony regarding the sexual attack upon T.F. is violative of LSA-C.E. Art. 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues, by danger of misleading the jury, or by considerations of undue delay, or waste of time. These arguments are meritless.
LSA-C.E. Art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, iden *121 tity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. [Emphasis supplied.]
In the present case, the defendant was charged with aggravated burglary. LSA-R.S. 14:60 defines aggravated burglary as follows:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, watercraft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering, arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
The prosecution argued that testimony regarding the attack upon T.F. was offered to prove that a battery had been committed during the commission of the burglary. Under such circumstances, the sexual attack, constituting a battery, related to “conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding,” and was thus admissible under LSA-C.E. Art. 404(B)(1).
Further, evidence of the sexual attack upon T.F. formed part of the res gestae and was an inseparable part of the whole deed in this case. The concept of res ges-tae, insofar as it relates to other crimes, continues to be sanctioned by the Louisiana Code of Evidence in LSA-C.E. Art. 404(B)(1). See State v. Lewis, 566 So.2d 1120 (La.App. 2d Cir.1990); State v. Camp, 580 So.2d 957 (La.App. 5th Cir.1991). See also State v. Hall, 457 So.2d 115 (La.App. 2d Cir.1984); State v. Williams, 375 So.2d 364 (La.1979).
Under the facts of this case, the trial court did not err in allowing testimony regarding the sexual attack upon T.F. The evidence was admissible under LSA-C.E. Art. 404(B)(1). Therefore, no mistrial was warranted.
EXCESSIVE SENTENCE
The defendant contends that the trial court erred in imposing an unconstitutionally excessive sentence. He argues the trial court failed to give sufficient consideration to several mitigating factors. At the of the commission of these offenses, the defendant was 17 years old and his family had suffered financial hardship while he was growing up. The defendant contends that if the trial court had considered these mitigating factors, lesser sentences would have been imposed. The defendant’s argument is meritless.
The defendant does not contend that the trial court failed to take cognizance of the sentencing factors enumerated in LSA-C.Cr.P. Art. 894.1. However, we observe that in determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La.1983).
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied 438 So.2d 1112 (La.1983).
The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even when there has not been full compliance with LSA-C.Cr.P. Art. 894.1. *122 State v. Landos, 419 So.2d 475 (La.1982). Important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied 521 So.2d 1143 (La.1988).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const. 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant’s prior convictions, but may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied 452 So.2d 695 (La.1984).
The record shows that the trial court adequately articulated the factors which it considered in imposing these sentences under LSA-C.Cr.P. Art. 894.1. As mitigating factors, the court did, in fact, consider the defendant’s young age of 17 years when these offenses were committed, that he came from a broken home, and that, because of financial difficulty, the family was forced to move to a neighborhood with a high crime rate.
As aggravating factors, the court noted that, prior to the trial of this case, the defendant had been convicted of two other felonies. In 1988 he pled guilty to aggravated battery, having cut another individual with a knife. In 1989 he pled guilty to simple robbery in connection with the robbery and beating of a convenience store attendant. The court noted that the defendant had also been charged with burglary and attempted murder in unrelated incidents but that these charges had been dismissed after the defendant’s convictions for the present offenses. The court stated that the defendant’s “prior acts involved guns and violence and doing what he wanted to do when he wanted to do it.” The court also noted that, throughout the trial of the case, the defendant behaved in a hostile manner toward his attorney.
The trial court found that the defendant was in need of correctional treatment best provided by a custodial environment and that lesser sentences than those actually imposed would deprecate the seriousness of the offenses. The court stated that the offenses in this case caused serious emotional and physical harm and that the defendant did not act under any provocation. The court found that the defendant must have contemplated that his actions would cause serious harm. The court found that there was a high likelihood that the defendant would commit another offense and found that the sentences imposed would not entail a hardship to the defendant or his family. Based upon these facts, we find that the trial court adequately considered the factors for imposing sentence listed under LSA-C.Cr.P. 894.1.
We also find that the trial court did not abuse its discretion in sentencing the defendant. The defendant faced a *123 maximum sentence of 99 years at hard labor without benefit of parole, probation or suspension of sentence for the armed robbery conviction and a maximum sentence of 30 years at hard labor for the aggravated burglary conviction. The defendant was ordered to serve 50 years at hard labor without benefit of parole, probation or suspension of sentence for the armed robbery conviction and 25 years at hard labor for the aggravated burglary conviction, with the sentences to be served concurrently.
The defendant had a significant criminal history involving violent criminal behavior and the offenses committed in this case were extremely reprehensible. The defendant had also been charged as a second felony offender in a habitual offender bill of information, but the prosecution chose to dismiss that bill of information, as well as dismissing charges of burglary and attempted murder against this defendant, following his convictions in the present case.
The sentences imposed by the trial court were tailored to both the offender and the offenses. The sentences imposed do not shock our sense of justice and are well within the trial court’s discretion.
ERROR PATENT
We note that in pronouncing sentence, the trial court was under the impression that at least one year of the sentence for aggravated burglary was required to be served without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:60, defining aggravated burglary and proving for the penalty, does not provide that any part of the sentence is to be served without benefit of parole, probation or suspension of sentence. Therefore, that portion of the defendant’s sentence specifying that one year of his 25 year sentence for aggravated burglary is to be served without benefit constitutes error patent on the face of the record. LSA-C.Cr.P. Art. 920. This error may be corrected by this court without remanding for resentencing. LSA-C.Cr.P. Art. 882. Therefore, we delete that portion of the defendant’s sentence for aggravated burglary requiring that one year be served without benefit of parole, probation or suspension of sentence. The sentence is affirmed in all other respects.
CONCLUSION
For the reasons stated above, we affirm the defendant’s convictions for armed robbery and aggravated burglary. We affirm the defendant’s sentence to 50 years at hard labor, without benefit of parole, probation or suspension of sentence, for armed robbery. We also affirm his sentence to 25 years at hard labor for aggravated burglary. The sentences are to be served concurrently. However, we delete that portion of the defendant’s sentence for aggravated burglary which orders that one year be served without benefit of probation, parole or suspension of sentence.
AMENDED AND AFFIRMED.